**Russell N. SHEWMAKER, Plaintiff,**

v.

**Joseph O. PARKER et al., Defendants.**

**Civ. A. No. 78–1495.**

United States District Court, District of Columbia.

June 18, 1979.

John I. Heise, Jr., Silver Spring, Md., for plaintiff.

Mary A. McReynolds, Dept. of Justice, Washington, D. C., for Parker and Alberger.

Moore, Bedell, Ablondi & Minchew, pro se.

### MEMORANDUM

BARRINGTON D. PARKER, District Judge.

On December 8, 1977, Chairman Daniel Minchew of the International Trade Commission (ITC or Commission) reassigned plaintiff Russell N. Shewmaker from his GS–17 position as General Counsel of the ITC to the GS–17 position of Senior Advisor. Shewmaker brings this suit against the current Chairman of the Commission and individual Commissioners to secure reinstatement to his former position, on grounds that the reassignment was illegal because not approved by a majority of the Commissioners as allegedly required by the delegation amendment to the Tariff Act of 1930.[1] The relevant statutory section provides that

1. Act of August 17, 1977, Pub.L. No. 95–106, 91 Stat. 867, 868 (amending 19 U.S.C. § 1331).

[s]ubject to approval by a majority vote of all the commissioners in office, the chairman may—(A) terminate the employment of any supervisory employee of the Commission whose duties involve substantial personal responsibility for Commission matters and who is compensated at a rate equal to, or in excess of, the rate for grade GS–15 . . . .

19 U.S.C. § 1331(a)(2).

■ The case comes before the Court on cross-motions for summary judgment. The parties agree that there are no disputed material facts and that the controlling legal question is whether the Chairman's reassignment of Shewmaker from General Counsel to Senior Advisor constituted a "termination of employment of a supervisory employee" under the statute. This statutory construction issue is, of course, a legal question left to the Court on administrative review. Administrative Procedure Act, 5 U.S.C. § 706.

On the basis of the extensive administrative record filed in the case, the relevant legislative history and the memoranda of the parties, the Court finds that Shewmaker was "terminated" in an illegal manner. Summary judgment will be entered for plaintiff, ordering his reinstatement as General Counsel of the ITC.

## I. *Background*

The International Trade Commission is an independent nonpartisan agency that investigates and reports to the President and Congress on matters concerning import trade, tariffs and trade agreements. The Commission has six members, three from each political party. The Chairmanship is a two year position filled by presidential designation and rotating by party among the Commissioners. The even number of Commissioners and lack of clear-cut administrative authority led the Commission, prior to 1977, to devote unwarranted amounts of time to administrative rather than substantive matters. To remedy the confusion and mismanagement, the 1977 Congress amended the Tariff Act of 1930. The delegation amendment authorizes the Chairman to make all administrative decisions, subject to the veto of a majority of the Commissioners in office, in all but two areas. 19 U.S.C. § 1331(a)(1). The Chairman may not "formulate the annual budget" or "terminate the employment of any supervisory employee . . . whose duties involve substantial personal responsibility for Commission matters," without approval by a majority vote of the Commissioners. 19 U.S.C. § 1331(a)(2).

By Administrative Order dated December 8, 1977, then Chairman Daniel Minchew reassigned General Counsel Shewmaker to the newly-created position of Senior Advisor. The reason for the change was Minchew's "increasing dissatisfaction" with Shewmaker's performance as General Counsel.[2] The reassignment resulted in no change in pay, rank or grade for Shewmaker, who had been General Counsel for 13 years. The Senior Advisor post, however, is not a supervisory one. At the same time as Shewmaker's reassignment, the General Counsel position was reclassified as a GS–16 position and filled. Three Commissioners noted disapproval of Shewmaker's reassignment and the filling of the General Counsel position.

Shewmaker pursued appropriate administrative remedies. He and the Commission stipulated that the controlling question of law in the grievance proceeding was whether his reassignment was a "termination" of employment under the delegation amendment. The Administrative Law Judge (ALJ) found in Shewmaker's favor,[3] but the Acting Director of Administration found that the ALJ had incorrectly analyzed legislative history and rejected the recommendations. The plaintiff's appeal of the Acting Director's decision led to a tie vote of the Commissioners, with Chairman Minchew participating over plaintiff's objections. This tie vote served to approve the Acting Director's decision against Shewmaker.

---

**2.** Affidavit of Daniel Minchew, March 30, 1978, at ¶ 3. Record at 273.

**3.** Ruling of ALJ, May 8, 1978, Record at 487; Report with Recommendations of ALJ, May 25, 1978, Record at 501.

## II.

The defendants' motion for summary judgment is based on their conclusion that the reassignment was a routine administrative matter, subject only to majority veto. They define the word "terminate" to mean "discharge" or "fire." Since Shewmaker was not discharged from service at the ITC, but continued there without a demotion, defendants deny that he was terminated.

Above and beyond a "plain meaning" argument, defendants cite several aspects of the legislative history to support their definition. First, the term "discharge" was used in the original House version of the bill, which gave the Chairman broad administrative authority except that his initiation of action with respect to the "employment and discharge of key personnel," the budget, and external relations required ratification.[4] The proposed Senate bill went farther and provided the Chairman with plenary authority in all administrative matters, subject to veto.[5] Since the delegation amendment was a compromise, defendants argue that "discharge" is the broadest definition that can be used to define "terminate." Second, the words "discharge," "fire" and "terminate" were used interchangeably at several points in the hearings;[6] for example, Representative Charles Vanik, the Committeeman in charge of the bill, agreed with Senator Long that the proposal meant that the Chairman "can't discharge somebody without consent of the four members."[7] Finally, given the overall purpose of the delegation amendment to improve ITC administration, defendants argue that the exceptions to the Chairman's plenary administrative authority must be read narrowly. "Terminate" should conse-

quently be read to mean "discharge" and not "reassign."

The plaintiff Shewmaker takes a broad and integrated view of the meaning and legislative history of the delegation amendment. Agreeing that the amendment covers an actual discharge, plaintiff urges that it also covers transfers and reassignments from supervisory positions. The Court concurs with this position, grounded as it is on the well-established principle of interpreting a statute rationally in a manner consistent with legislative purpose.[8]

■ The Court finds that, despite defendants' restrictive focus on the word "terminate" in the delegation amendment, the operative phrasing is "termination of the employment of any supervisory employee." Chairman Minchew's reassignment of Shewmaker from General Counsel to Senior Advisor stripped him of supervisory powers, a fact which defendants do not deny. On these grounds alone, it appears that Shewmaker was terminated without a majority vote of the Commissioners in violation of the delegation amendment.

■ This emphasis on the supervisory status of an employee is supported by the legislative history of the amendment. While the overall purpose was to correct poor ITC management by delegating most administrative authority to the Chairman, Congress refused to sacrifice traditional nonpartisanship to administrative efficiency. Indeed, the Congress sought to avoid the possibility of a "strong Chairman" making the key staff responsible only to him or her rather than to the whole Commission. In reporting on the conference bill, Representative Vanik explained:

---

**4.** H.R.Rep. No. 217, 95th Cong., 1st Sess. 18–19 (1977).

**5.** S.Rep. No. 122, 95th Cong., 1st Sess. 8 (1977) U.S.Code Cong. & Admin.News 1977, p. 1673.

**6.** Authorization of Appropriations for and Oversight of the U.S. International Trade Commission and Comparability of Trade and Production Statistics, Hearings Before the Subcomm. on Trade of the House Committee on Ways and Means, 95th Cong., 1st Sess. (1977).

**7.** Transcript of Hearings Before the Senate Finance Committee and House Comm. on Ways and Means, July 12, 1977, at 43–44. Record at 336–37.

**8.** *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *United States v. American Trucking Ass'ns, Inc.,* 310 U.S. 534, 542, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

Regarding the discharge of key personnel, in reserving such action for Commission approval the conferees recognized that the need for an expert and objective staff is compelling. Personal differences between the Chairman and key staff personnel should not be permitted to result in the *discharge* of key personnel or their *removal* from their position if a majority of the Commission does not agree with such a proposed action by the Chairman (emphasis added).[9]

Representative Vanik's remarks are to be accorded substantial weight in statutory interpretation, because he was Committeeman in charge of the legislation. *Federal Energy Administration v. Algonquin SNG, Inc.,* 426 U.S. 548, 564, 96 S.Ct. 2295, 49 L.Ed.2d 49 (1976). This report demonstrates that "terminate" encompasses "discharge" and "removal" of key supervisory personnel from the agency. More important, on a less definitional level, the report demonstrates congressional intent to avoid the partisanship that could result from a Chairman having plenary authority to discharge, fire, remove, transfer or reassign key supervisory employees. The scattered references to "discharge" as the definition of "terminate" in the hearings do not override his analysis. Most important, Vanik's statements were never contradicted or excepted by other Congressmen.[10]

Indeed, as plaintiff points out, defendants' statutory construction proves too much because it would allow the Chairman to do in two steps what he or she cannot legally do in one. First, the Chairman could "reassign" a supervisory employee to a nonsupervisory position, without the ratification needed for a "discharge" and, second, could unilaterally discharge the employee entirely under 19 U.S.C. § 1331(a)(1). This possibility is certainly not the intent of a Congress concerned with potential abuses by a "strong Chairman." In making this determination, the Court in no way finds that Shewmaker is the victim of such a two-step process, now only at step one, a suggestion both raised and denied by defendants.

In conclusion, the Court finds that the reassignment of Shewmaker was a "termination" under the delegation amendment. To quote the ALJ:

This "reassignment" let grievant go as General Counsel which could well have affected the morale, integrity, and objectivity of the staff. It is also an action which could exemplify the means by which a strong Chairman could exert undue influence upon his staff to the detriment of the required objectivity so necessary in their work.

It is, therefore, the type of action which Congress intended and attempted to prevent or minimize in paragraph (a)(2) of the Act. This type of reassignment as accomplished here without the approval of a majority of the Commissioners would have the same chilling effect upon the morale and integrity of the staff as would a summary discharge of the employee.[11]

Because Shewmaker's termination was not ratified by a majority of the Commissioners

---

**9.** 123 Cong.Rec.H. 8673 (daily ed. August 4, 1977). *See also* S.Rep. No. 122, 95th Cong., 1st Sess. 5 (1977).

**10.** Nor does the Court give much weight to defendants' citations of post-passage remarks by legislators. It is true that in 1978 Senate Finance Committee hearings on the ITC Fiscal Year 1979 appropriations bill, Senator Ribicoff described the delegation amendment as giving the Chairman broad authority to make administrative decisions,

including transferring people in the agency, . . . restrict[ing him] only in terminating employment with the Commission—complete

removal from the rolls of the agency—and the formulation of the budget.
Fiscal Year 1979 Authorization of Appropriations for the U.S. International Trade Commission, Hearing Before the Subcomm. on International Trade of the Senate Comm. on Finance, 95th Cong., 2d Sess. 5 (1978). However, post-passage remarks do not illuminate legislative intent and, in this case, could be prejudicial because made after Shewmaker's problematic reassignment. This material was not part of the administrative grievance record before the ALJ, but the Acting Director of Administration did consider it.

**11.** Ruling, *supra* note 3, at 12. Record at 498.

in office, and was indeed objected to by three, the Chairman acted outside his statutory authority. As a matter of law, the reassignment must be vacated and Shewmaker reinstated to the position of General Counsel.

Ordered accordingly.