Steven Harris **KEENEY**,
**Plaintiff–Appellee,**

v.

**FEDERAL BUREAU OF INVESTIGATION, Clarence M. Kelley, Director, Federal Bureau of Investigation, United States Department of Justice, and Edward H. Levi, Attorney General of the United States, Defendants–Appellants.**

**No. 1037, Docket 79–6267.**

United States Court of Appeals,
Second Circuit.

Argued April 1, 1980.
Decided Sept. 3, 1980.

---

Michael Graham, Hartford, Conn., for plaintiff–appellee.

John C. Hoyle, Atty., Dept. of Justice, Washington, D.C. (Alice Daniel, Asst. Atty. Gen., Richard Blumenthal, U.S. Atty., D. Connecticut and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., on brief), for defendants–appellants.

Before LUMBARD, MANSFIELD and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Defendants appeals from so much of a judgment of the United States District Court for the District of Connecticut, T. Emmet Clarie, Chief Judge, as ordered the Federal Bureau of Investigation ("FBI") to disclose to plaintiff, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1976), certain information supplied to the FBI by local law enforcement agencies. Because we conclude that such agencies may constitute "confidential source[s]," information from which may be exempt from disclosure under § 552(b)(7)(D), we vacate the judgment and remand for further proceedings.

## FACTS

In the late 1960's the FBI compiled a dossier on plaintiff in connection with his New Left activities and his position as president of the Trinity College chapter of the Students for a Democratic Society. Plaintiff was apparently never prosecuted under federal law for any such activities. The FBI eventually closed its file on plaintiff and took his name off its list of potentially dangerous persons.

On July 27, 1975, plaintiff wrote to the FBI requesting copies of all files kept or maintained by the FBI concerning him. On August 24, 1975, at the FBI's request, he furnished additional information to enable it to make an accurate search of its records. During the ensuing year, plaintiff received no documents from the FBI, despite several follow–up requests and the intervention of plaintiff's congressman. The FBI explained that the delay was caused by an administrative backlog and the need to refer plaintiff's request to the FBI's Intelligence Division because some of the information in plaintiff's dossier was considered "classified." Plaintiff filed an appeal with-

in the FBI but no action was taken on his appeal, apparently because the Appeals Unit also was suffering a backlog.

Plaintiff filed this action on October 8, 1976, seeking release of all of the FBI's documents concerning him. Meanwhile, the FBI had written to plaintiff on October 5, 1976, to advise him that 80 pages of material would be released to him upon his payment of an $8.00 duplicating fee. Plaintiff paid this fee and the 80 pages were released to him, but with substantial excisions. In response to plaintiff's administrative appeal, the FBI later released additional pages of material, consisting both of new material and of pages from the original release, now made available with less extensive deletions.

With these releases made, the dispute in the district court centered on the propriety of the deletions from the materials released and of the FBI's continued withholding of certain documents. Both sides moved for summary judgment. In support of their motion for summary judgment, the defendants submitted an affidavit by an FBI records supervisor, together with copies of the documents released and a comprehensive index which described in general terms the documents withheld, the information deleted from the released documents, and the FOIA exemption relied on for each withholding or deletion.

The motions for summary judgment were referred to Magistrate F. Owen Eagan, who, after receiving additional evidence and argument, filed a report recommending that the FBI be ordered to disclose to plaintiff any and all information concerning him still withheld by it, with seven exceptions.[1] This recommended ruling rejected the de-

fendants' contention that, pursuant to FOIA exemption 7(D), the FBI should not be required to disclose information received in confidence from local law enforcement agencies:

> [T]he FBI may not withhold any information transmitted by local law enforcement agencies on the grounds that they are confidential sources. Section (b)(7)(D) "does not extend to entities such as corporations, credit bureaus, or other organizations, including law enforcement agencies."

(Magistrate's Report at 8–9, quoting *Ferguson v. Kelley*, 448 F.Supp. 919, 925 (N.D.Ill. 1978), *on motion for reconsideration*, 455 F.Supp. 324 (N.D.Ill.1978)). By endorsement on the report, the district court adopted the magistrate's findings of fact and conclusions of law, and judgment was entered accordingly.

Defendants appeal only from so much of the district court judgment as orders disclosure of information supplied by local law enforcement agencies. Plaintiff has not cross–appealed with respect to any of the exceptions to disclosure allowed by the judgment. The sole issue on this appeal, therefore, is whether local law enforcement agencies may constitute "confidential source[s]" for purposes of exemption from disclosure.

## DISCUSSION

■ FOIA provides in general that agency records must be disclosed to the public on request. 5 U.S.C. § 552(a). The statute provides a number of exemptions, however, including exemption 7(D), § 552(b)(7)(D), which is at issue here:

> (5) the identity of any third parties who provided the FBI with information and the dates such information was given;
> (6) any material which does not concern the plaintiff or the investigation thereof contained in the thirteen documents regarding other individuals or subjects; and
> (7) various records apparently housed in field offices throughout the country.

No question has been raised here as to the propriety of any of these exceptions.

---

1. The seven exceptions to the magistrate's recommended ruling of disclosure by the FBI were as follows:
   (1) any codes and/or other identifying numbers used to classify agents, informers, or documents;
   (2) the names of any FBI agents;
   (3) the names of local law enforcement personnel;
   (4) the names of those people arrested with the plaintiff subject to an investigation and/or otherwise of interest to the FBI;

(b) This section does not apply to matters that are—

\*     \*     \*     \*     \*     \*

(7) investigatory records complied for law enforcement purposes, but only to the extent that the production of such records would . . .

(D) disclose the identity of a confidential source and, *in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation*, or by an agency conducting a lawful national security intelligence investigation, *confidential information furnished only by the confidential source* . . . .

5 U.S.C. § 552(b)(7)(D) (emphasis added). The cardinal question is the meaning of the words "confidential source." The magistrate construed these words to apply only to natural "persons" who provided information under an assurance, express or implied, of confidentiality. He concluded that the phrase " 'does not extend to entities such as corporations, credit bureaus, or other organizations, including law enforcement agencies.' " We disagree.

The plain language of exemption 7(D) does not suggest so narrow a construction. While a "source" of information obviously may be a single individual, one definition of "source" is "[t]hat from which anything comes forth." Webster's *New International Dictionary* 2405 (2d ed. 1957) (definition 3). *See also Webster's Third New International Dictionary* 2177 (1976) (definition 2b: "a point of origin or procurement . . . , SUPPLIER"). Accordingly, with respect to information, the word "source" is routinely used to refer also to statements, studies or compilations by collective entities such as committees, government agencies, corporations, and so forth. All of these are rather commonly referred to as sources of information. The modifier "confidential," evidently used in this context to mean showing trust in another, or "disposed to relate or confide private or secret matters," *see Webster's Third New International Dictionary, supra* at 476 (definition 2a), excludes sources which provide generally available

data. But nothing in that word or in the experience of everyday life suggests that only natural persons can be disposed to confide secret information. Corporations, for example, commonly treat certain types of data as private and rely on business associates or governmental agencies not to make disclosures. Similarly an affidavit submitted by defendants in the present case indicated that local law enforcement agencies traditionally expect that information they provide to the FBI will be kept confidential. There appears to be no reason why a law enforcement agency which imparts information to the FBI on an understanding that it will not be revealed would not come within the plain meaning of the words "confidential source." *See, e.g., Church of Scientology v. United States Dep't of Justice*, 612 F.2d 417, 420 (9th Cir. 1979). *Accord, id.* at 428–29 (Wallace, J., dissenting).

Nor do we construe the legislative history of exemption 7(D) as requiring the narrow construction adopted in the district court. As originally enacted, exemption 7 of FOIA excluded from disclosure only "investigatory files compiled for law enforcement purposes except to the extent available by law to a private party." Pub.L.No. 89–487, 80 Stat. 251 (1966) (codified with a slight change in language by Pub.L.No. 90–23, 81 Stat. 55 (1967)). The present language of exemption 7, including subpart (D), was added in the 1974 Amendments to FOIA, Pub.L.No. 93–502, § 2(b), 88 Stat. 1563 (1974), and was a modification of an amendment proposed by Senator Hart as follows:

Section 552(b)(7) is amended to read as follows:

"Investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication or constitute a clearly unwarranted invasion of personal privacy, (C) disclose the identity of an informer, or (D) disclose investigative techniques and procedures."

120 Cong.Rec. 17033 (1974), *reprinted in* Subcomm. on Government Information and Individual Rights of the House Comm. on Government Operations & Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary, *Freedom of Information Act and Amendments of 1974 (P.L. 93–502): Source Book: Legislative History, Texts, and Other Documents* 332 (Joint Comm. Print 1975) [hereinafter cited as *"Source Book"*]. The Hart proposal sparked vigorous debate in the Senate, with opponents focusing on the danger that paid informants and civic-minded citizens would no longer supply information to the FBI, for fear that the information would now be subject to disclosure under FOIA. *See id.* at 17033–40, *Source Book* at 332–51. Senator Hruska in particular expressed the view that a skilled researcher might be able to determine who had supplied information released by the FBI simply from the information itself. *Id.* at 17036–37, *Source Book* at 339–42. Notwithstanding these objections, Senator Hart's proposed amendment was passed by the Senate.

Since there was no language similar to the Hart amendment in the House version of the bill, this was one of the matters sent to a House–Senate conference for reconciliation. During the course of the conferees' deliberations, President Ford outlined his objections to certain portions of the bill, including the Hart amendment, in a letter to Senator Kennedy and Representative Moorhead, the chairman respectively of the Senate and House conferees:

> The Senate but not the House version amends the exemption concerning investigatory files compiled for law enforcement purposes. I am concerned with any provision which would reduce our ability to effectively deal with crime. This amendment could have that effect if the sources of information or the information itself are disclosed. These sources and the information by which they may be identified must be protected in order not to severely hamper our efforts to combat crime.

*Source Book* at 369–70. In response to these objections and to continued expressions of concern by Senator Hruska and others that disclosures might cause the drying up of sources of information which insisted on confidentiality, the conference committee agreed on the present form of exemption 7(D), changing Senator Hart's language in two significant respects. First, the broader term "confidential source" was substituted for "informer." Second, whereas the Hart proposal would have exempted only information that would disclose the identity of the informer, the conference modification allowed the federal law enforcement agencies from whom FOIA disclosure is sought "not only [to] withhold information which would disclose the identity of a confidential source but also [to] provide blanket protection for any information supplied by a confidential source." Remarks of Senator Hart, *Source Book* at 451. *See* extensive discussion in *Church of Scientology, supra.* Senator Kennedy and Representative Moorhead described the conference committee changes in a letter to President Ford as follows:

> The conference committee has also acted affirmatively to satisfy your major objections to the proposed amendments to subsection (b)(7) of the Freedom of Information Act, dealing with specific criteria for the withholding of Federal investigatory records in the law enforcement area.
>
> \*    \*    \*    \*    \*    \*
>
> After reviewing the points made in your letter on this point, the conference committee also agreed to adopt language offered by Senator Hruska to permit the withholding of the *information* provided by a confidential source to a criminal law enforcement authority during the course of a criminal or "lawful national security intelligence investigation."

120 Cong.Rec. 33159 (1974) (emphasis in original), *reprinted in Source Book* at 371.

While the President still did not approve the legislation, Congress overrode his veto, and exemption 7(D) was enacted as modified by the conference committee. This history of the broadening of 7(D) is consistent with the plain meaning of the words "confidential source."

It is true, as pointed out in the dissenting opinion in *Church of Scientology, supra* and in *Ferguson v. Kelley, supra,* relied on by the magistrate here, that at various points during the discussion of the conference modification of the Hart proposal, the word "person" or "him" was used in referring to the confidential source whose information was to be protected. *See, e.g.,* H.R.Rep.No. 93–1380, 93d Cong., 2d Sess. (1974) (conference report), *reprinted in Source Book* at 230. We agree with the majority in *Church of Scientology,* however, that these references are not in any sense definitive. There were of course clear expressions of concern for individual informants; this is readily understandable since the vulnerability of an individual to reprisals could easily cause him to fear to give information if he thought his identity would be disclosed. But in broadening the exemption Congress's fundamental concern, of which consideration for individual informants was merely derivative, was "that law enforcement agencies should not be faced with a 'drying up' of their sources of information or have their criminal investigative work be seriously impaired. *Source Book* at 381, 391–92, 451, 468, 473, and 476." *Church of Scientology, supra,* 612 F.2d at 425. Since this overriding concern would seem to encompass the flow of information from a local law enforcement agency which sought confidentiality, we do not believe that the ambiguous uses of the term "person" and "him" in the legislative history should be read as intending to narrow the simultaneously broadened term "confidential source."

Our conclusion that a law enforcement agency may constitute a confidential source within the meaning of exemption 7(D) is consistent with all but one of the cases which have addressed this issue. *See Church of Scientology, supra; Nix v. United States,* 572 F.2d 998, 1005 (4th Cir. 1978); *Moody v. IRS,* 80–1 U.S. Tax Cas. ¶ 9254, at 83,499 (D.D.C. Feb. 28, 1980); *Katz v. Department of Justice,* No. 76 Civ. 5813 (S.D. N.Y. Aug. 17, 1979) (unreported decision available in LEXIS); *Lopez Pacheco v. FBI,* 470 F.Supp. 1091, 1104 (D.P.R. 1979); *Smith v. Flaherty,* 465 F.Supp. 815, 820–21 (M.D. Pa. 1978); *Varona Pacheco v. FBI,* 456 F.Supp. 1024, 1032 (D.P.R. 1978); *Lincoln Nat'l Bank v. Department of Justice,* No. 76 C 4531 (N.D. Ill. May 5, 1978) (unreported decision available in LEXIS); *Mitsubishi Elec. Corp. v. United States Dep't of Justice,* 1977–1 Trade Cas. ¶ 61,356, at 71,263 (D.D.C. 1977). The lone exception is *Ferguson v. Kelley, supra,* which we find unpersuasive in light of our discussion above. We also note in passing that, whatever may be the force of the holding in *Ferguson v. Kelley* with respect to corporations and credit bureaus, it appears that its statement that exemption 7(D) cannot apply to local law enforcement agencies, 448 F.Supp. at 925, may have been pure dictum since the defendants did not assert this exemption for any police departments, *see* 455 F.Supp. at 326. And whether dictum or holding, another judge in the same district has taken a different approach, ruling that exemption 7(D) allowed nondisclosure of confidential information supplied by local law enforcement agencies. *See Lincoln Nat'l Bank, supra.*

█ For all of the foregoing reasons we conclude that a local law enforcement agency may be a confidential source within the meaning of exemption 7(D).[2] Whether or not the information whose disclosure is re-

---

**2.** We also reject plaintiff's argument that the exemption is inapplicable because the local law enforcement agencies in the present case have now been identified, and thus cannot constitute "confidential" sources. As we have discussed above, the term "confidential" is used in exemption 7(D) in the sense of reposing confidence or trust, rather than in the sense of "secret." This is reflected in the congressional conference committee's expansion of the exemption to permit non–disclosure not just of the source's identity, but also of all information provided by the source. The expansion was consistent with Congress's desire to ensure the continued flow of information from all sources, for while there will obviously be circumstances in which such agencies will not wish the fact of their own investigations to be made public and hence will not wish their identity disclosed, it is equally conceivable for an agency that is known to be investigating a particular matter to seek confidential treatment for fruits of that investigation.

quested under FOIA was furnished by the local agency on the express or implied understanding that it was to be kept confidential, however, is a question of fact to be determined with respect to each such request. The district court in the present case, given its view that local law enforcement agencies were excluded from the definition of "confidential source[s]," did not reach the question whether the information withheld here was provided under such an assurance or understood custom of confidentiality. We therefore remand to the district court for determination of this issue and of such other factual questions as may be pertinent.

We vacate the judgment below insofar as it required the defendants to disclose information obtained from local law enforcement agencies, and remand for further proceedings before a district judge. Jurisdiction is retained in the Court of Appeals.