Dana BIBERMAN, Judith Clark, Jennifer Dohrn, Eve Rosahn and Natalee Rosenstein, Plaintiffs,

v.

FEDERAL BUREAU OF INVESTIGATION, William H. Webster, Director, Federal Bureau of Investigation, United States Department of Justice, William French Smith, Attorney General of the United States, Defendants.

No. 79 Civ. 2313 (MEL).

United States District Court, S. D. New York.

Jan. 5, 1982.

Susan V. Tipograph, New York City, for plaintiffs.

Natalee Rosenstein, pro se.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants; William J. Hibsher, Asst. U. S. Atty., Thomas J. Coyle, Federal Bureau of Investigation, Legal Counsel Division, New York City, of counsel.

LASKER, District Judge.

This action is an outgrowth of *Clark v. United States*, currently pending before this Court. The *Clark* complaint alleges that plaintiffs have been the subjects of a counter-intelligence program which included break-ins, burglaries, wiretappings, and numerous other forms of harassment, in violation of their Constitutional, statutory, and common law rights. The defendants originally included a number of former high government officials, such as Richard Nixon and L. Patrick Gray,[1] as well as former Federal Bureau of Investigation ("FBI") agents Edward Miller and W. Mark Felt. One of the most striking facts in the background of *Clark* is that several of the defendants in that case have been indicted, and two have been convicted after jury trials,[2] for actions that are among the subjects in the *Clark* complaint.

The *Clark* plaintiffs, confronting alleged obstacles in securing discovery in that action, exercised their rights under the Freedom of Information Act, 5 U.S.C. § 552, ("FOIA"), to supplement their discovery efforts. Plaintiffs made a FOIA request to the FBI for copies of documents related to them. In response, numerous documents were delivered to plaintiffs, many of which, however, were heavily redacted. Considering defendants' response to be insufficient, plaintiffs commenced this action. Plaintiffs moved pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (C.A.D.C.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) for an itemization and index of the documents produced and a justification of all exemptions claimed under the FOIA. The FBI submitted "*Vaughn* affidavits" in response to plaintiffs' motion. Plaintiffs contend that the FBI's response to their FOIA request was inadequate in two respects: 1) the exemptions claimed were not justified, either by the *Vaughn* affidavits, or under the standards established by the relevant case law; and 2) the FBI failed to

---

1. The complaint has been dismissed as to Gray for lack of jurisdiction under the authority of *Grove Press v. Angleton*, 649 F.2d 121 (2d Cir. 1981).

2. The two defendants who had been convicted, Felt and Miller, were pardoned by President Reagan on March 26, 1981.

conduct a complete search of its records. Both parties have moved for summary judgment pursuant to Fed.R.Civ.Pr. 56.

*The Exemptions*

Allegedly in reliance on the exemptions specified by the FOIA, substantial deletions were made by defendants in the documents provided to plaintiffs. Although the *Vaughn* affidavits did not appear to be inadequate, it seemed appropriate, in view of the extraordinary background of the case, to conduct an *in camera* inspection of the unexcised documents. However, on account of the voluminous nature of the files in question, it was determined that one file would be reviewed as a sample of all of the claims of exemption. The parties approved the sampling method, although agreement was not reached on which file was to be used as a sample. The Court decided to use the file of plaintiff Rosahn because, although it is the shortest, it is nevertheless sufficiently voluminous to constitute a reasonable sample of the types of deletions in all the files and to permit a determination as to whether the deletions were permissible under the statutory exemptions to the FOIA.

In the course of the *in camera* review of the Rosahn file, certain notations were found on the documents, the meaning of which were unclear. A meeting was held, on the record, although in the absence of plaintiffs' counsel, at which two FBI agents explained what the notations meant and what the relations of the notations were to the exemptions under the Act and to the contents of the *Vaughn* affidavits. The record of the meeting has been sealed.

On the basis of the *Vaughn* affidavits and the *in camera* inspection, we conclude that the deletions in the documents provided to plaintiffs are justified by the FOIA exemptions.

The FBI relied primarily on three exemptions in making deletions from the documents sent to plaintiffs: section 552(b)(1), the national security exemption; section 552(b)(7)(C), the privacy exemption; and section 552(b)(7)(D), the exemption for confidential sources.

The national security exemption, § 552(b)(1), provides that materials are exempt if "authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and . . . in fact properly classified pursuant to such Executive Order." The Executive Order ("EO") controlling this case is EO 12065, 43 Fed.Reg. 28949 (June 28, 1978). Plaintiffs' principal argument is that EO 12065 provides that materials classified thereunder must reasonably be expected to cause identifiable damage to national security, and that the FBI has failed to identify any specific damage to national security which can reasonably be expected to flow from disclosure of this information. In response, defendants rely primarily on the affidavit of Special Agent Klossner, which lists a number of possible harms resulting from disclosure of the excised portions, including death of a source, discontinuance of a source's services, and damage to ongoing intelligence activities. Such harms, if they exist, constitute identifiable damage to national security.

The standard for determining the applicability of the national security exemption has been established:

> "[S]ummary judgment should be granted to the Government if its affidavits appear to be made in good faith, describe the contested document so that it logically fits into the asserted exemption, and are substantially unrebutted by plaintiff."

*Lamont v. Department of Justice,* 475 F.Supp. 761, 768 (S.D.N.Y.1979) (Weinfeld, J.)

There is no reason to doubt Agent Klossner's good faith, nor has any specific rebuttal been offered by plaintiffs. The *in camera* inspection of the documents was intended to determine whether the documents "logically fit[ ] into the asserted exemption"; we are satisfied that they do.

Subsection (b)(7)(C) provides an exemption for "investigatory records compiled for law enforcement purposes . . . to the extent that production of such records would . . . constitute an unwarranted invasion of pri-

vacy. . ." The items deleted under this exemption are the names of FBI agents, of other government employees and of third parties, and personal information about the third parties. It is uncontested that (b)(7)(C) requires the striking of a balance between the public's interest in the information and the privacy interests of the individuals concerned. *Columbia Packing Co. v. United States Dept. of Agriculture*, 563 F.2d 495, 498 (1st Cir. 1977). The public interests at stake here have been balanced against similar privacy interests often enough in the past that the outcome is beyond dispute.

"[I]t has consistently been held that Exemption 7(c) protects the names of FBI agents and other nonpolicymaking government officials associated with investigations, for '[p]ublic identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives. While the right to privacy to these FBI agents is perhaps minimal . . . the public interest in the identification of the FBI agents who conducted the investigation . . . [appears] to be even less.' Similarly, the exemption shields identities of third persons subject to FBI inquiries or cooperating in such investigations."

*Lamont v. Department of Justice, supra,* 475 F.Supp. at 777. The exemptions claimed under subsection (b)(7)(C) are accordingly upheld.

Subsection (b)(7)(D) provides for the exemption of records compiled for law enforcement purposes which would disclose the identity of a confidential source. Pursuant to this exemption, defendants have withheld the names and symbols of FBI confidential sources, and information furnished by sources where such information could lead to identification of the source. Plaintiff argues, first, that the exemption does not apply because the affidavits do not set forth facts demonstrating that the sources were promised confidentiality. The exemption, however, does not require a finding that express assurances of confidentiality were given, as long as the circum-

stances were such that an assurance of confidentiality could reasonably be implied, *T. V. Tower, Inc. v. Marshall*, 444 F.Supp. 1233, 1235 (D.D.C.1978). To the extent that the affidavits failed to set forth sufficient facts to allow a determination that such circumstances existed, those omissions have been cured by the *in camera* inspection of the Rosahn file.

■ Second, plaintiffs argue that credit bureaus, banks, local governments, and the like cannot be considered confidential sources and that if such institutions are among the sources whose identities were deleted, the deletions were unjustified. Plaintiffs contend that such institutions do not have any reasonable expectation in or need for privacy with regard to these matters. This argument is foreclosed by *Keeney v. Federal Bureau of Investigation*, 630 F.2d 114 (2d Cir. 1980) in which local law enforcement agencies were held to constitute confidential sources for the purposes of subsection (b)(7)(D). Although the holding of *Keeney* extended only to local law enforcement agencies, the reasoning leaves no doubt that credit bureaus and banks must be accorded the same protections. *See Keeney, supra* at 117 ("the word 'source' is routinely used to refer also to statements . . . by . . . corporations, and so forth. . . . [N]othing in that word . . . suggests that only natural persons can be disposed to confide secret information.")

■ Finally, plaintiff argues that subsection (b)(7)(D) may not be used to conceal illegality. Although it is true, as plaintiffs suggest, that one of the purposes of the FOIA is to assure that the government obeys the law, that general purpose is overridden where the identity of a confidential source would be disclosed.

### The Document Search

Plaintiffs make two arguments in support of their contention that the FBI's search for documents related to them was inadequate.

■ First, plaintiffs argue that the FBI failed to search its field offices for documents relating to the plaintiffs. Defendants respond that searches of field offices were conducted for the three plaintiffs who specifically requested a field office search, but that there is no duty to search the numerous FBI field offices in response to plaintiffs whose requests were directed only to FBI headquarters in Washington, D. C.

Plaintiffs' concern is understandable. If they now make new requests for field office searches, and those requests are processed on a first-come, first-served basis, they may suffer considerable delay. Yet as Judge Goettel has stated:

> "[I]t would be untenable to hold that, as the litigation proceeds, a plaintiff, by continually adding new requests . . . could command a priority based on the date of the initial requests. Stated simply, the litigation would then be a vehicle for endless additional FOIA requests . . . and would effectively grant to litigating plaintiffs a preference over all other FOIA claimants."

*Grove Press v. United States Department of Justice*, Civ. No. 75–6204 (S.D.N.Y. June 12, 1979).

The FOIA requires that an agency make "records promptly available" to a requester upon a request which "reasonably describes such records." 5 U.S.C. § 552(a)(3). It has frequently been held that a general FOIA request to headquarters does not "reasonably describe" a search of numerous field offices. *Marks v. United States*, 578 F.2d 261 (9th Cir. 1978); *Grove Press v. United States Department of Justice, supra.* Moreover, it would be unreasonably burdensome to require the FBI to search its fifty-nine field offices in response to every FOIA request, particularly in view of the agency's demonstrated willingness to undertake field office searches when they are specifically requested.

Finally, plaintiffs contend that the FBI's search was inadequate because the FBI utilized only its "Central Records System" index to locate plaintiffs' records, despite the availability of other indices which might have yielded additional documents relating to the plaintiffs.

Defendants' respond that: 1) case law supports their position that a search of the Central Records index is adequate; and 2) "If plaintiffs are aware of other files which contain references to them, they are free to file other FOIA requests." (Defendants brief at 22.)

The cases cited by defendants fail to support their position. Both *Stern v. United States Department of Justice*, Civ. No. 77–3812 (D.Mass. August 25, 1980) and *Goland v. Central Intelligence Agency*, 607 F.2d 339 (D.C.Cir.1979), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980) hold only that an agency is not required to conduct a document-by-document search, not that an agency need not use the indices it has available. In *Stern*, the plaintiff requested a "hand search"; in *Goland* the court noted that the documents at issue were not indexed, *Id.* at 370.

Defendants do not claim that the Central Records index is the *only* available index. Rather, the affidavit of Special Agent Loome states that the Central Records System is the "*primary* record system maintained by the FBI." (Loome Affidavit at 9.)

In other reported cases, the FBI has used its "Electronic Surveillance Indices" (Elsur) to locate documents in response to FOIA requests, *Marks v. United States, supra*, 578 F.2d at 263; *Ferguson v. Kelly*, 455 F.Supp. 324 (N.D.Ill.1978). No explanation is offered for the agency's failure to utilize Elsur in response to plaintiffs' request.[3]

Defendants are in effect arguing that they will not use any index other than Central unless the plaintiffs are knowledgeable enough about FBI recordkeeping to

---

3. Elsur is described in the Federal Register as covering "Individuals who have been the targets of direct electronic surveillance coverage by the FBI, who have participated in conversations monitored by an FBI electronic installa-

tion, or who have owned, leased, or licensed premises on which the FBI has conducted an electronic surveillance." 40 Fed.Reg. 38770 (Aug. 27, 1975)

request the search of a specific index. The requirement that a FOIA request "reasonably describe" the documents sought "does not mean that the person making the request must have an intimate knowledge of the agency's filing system or internal organization ..." *Grove Press, supra,* at 4.

■ Thus, defendants have failed to satisfy their obligations under the FOIA to the extent that they have failed to search all available indices which are reasonably likely to contain references to plaintiffs.

Accordingly, defendants' motion for summary judgment is granted with respect to the issues of the validity of the exemptions claimed under the FOIA and the failure to conduct a search of the FBI field offices. Defendants' summary judgment motion is denied with respect to the adequacy of the search of the FBI indices and they are ordered to search all available indices which are reasonably likely to contain references to plaintiffs. Plaintiffs' motion for summary judgment is denied.

It is so ordered.