**Russell N. SHEWMAKER, Plaintiff,**

v.

**Daniel MINCHEW, Defendant.**

**Civ. A. No. 79–2097.**

United States District Court, District of Columbia.

Oct. 10, 1980.

John I. Heisi, Jr., John Rhody, Silver Spring, Md., for plaintiff.

Kenneth Raisler, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

Plaintiff, Russell N. Shewmaker, the General Counsel to the International Trade Commission, brings this action for damages, alleging violations of his due process rights, his statutory rights, his constitutional and common law rights to privacy, and the common law torts of defamation, interference with his professional career, and intentional infliction of emotional harm. He seeks compensatory and punitive damages in excess of $10,000. Defendant, Daniel Minchew, was at all times material to this case a Commissioner and/or Vice Chairman or Chairman of the International Trade Commission. These allegations stem from defendant's allegedly unlawful behavior connected with plaintiff's discharge from his position at the Commission.

The background of this case, as highlighted in plaintiff's complaint, is as follows: on December 8, 1977, Chairman Daniel Minchew of the International Trade Commission reassigned plaintiff Russell N. Shewmaker from his position as General Counsel to the position of Senior Advisor. In response, Shewmaker brought suit in this court against the then Chairman of the Commission and individual commissioners, including Minchew, all in their official capacities. He claimed the right to reinstatement to his former position because the reassignment failed to comply with the termination procedure specified by statute, 19 U.S.C. § 1331(a)(2). *Shewmaker v. Parker*, 479 F.Supp. 616 (D.D.C.1979). In his complaint in that case, plaintiff specifically cited allegedly unlawful acts by defendant as one basis for his action. *See* Complaint, ¶¶ 13, 20, 34. The court held that Shewmaker's transfer amounted to a termination from his position and, as a termination, failed to comply with the procedure delineated in § 1331(a)(2). Shewmaker sought equitable relief only, requesting a judgment declaring that defendants terminated him improperly, an order directing defendants to reinstate him, and asking for any additional relief the court deemed just and equitable. He did not request damages. The court ordered that he be reinstated to the position of General Counsel.

Shewmaker now returns to this court in a new action, suing Minchew in his individual capacity for his allegedly wrongful behavior in procuring Shewmaker's transfer. He alleges that Minchew intentionally circumvented the statutory prohibition of

§ 1331(a)(2) by improperly terminating plaintiff's employment as General Counsel; that he repeatedly harassed and attempted to intimidate Shewmaker by attacking his character in remarks to other agency and Congressional employees and to the news media; and that, after his termination, Minchew sought to block any fair hearing which might have redressed the illegal termination.

In response to this complaint, defendant filed a motion to dismiss for failure to state a claim. Defendant argues that plaintiff's claim should be dismissed under the doctrine of res judicata because it is barred by plaintiff's earlier action against the same defendant. He further argues that, even if plaintiff's claim were not barred by res judicata, it would nevertheless have to be dismissed. First, defendant argues that plaintiff's common law tort claims must be barred under the doctrine of sovereign immunity because defendant was acting at all times within the scope of his official authority. Second, he contends that plaintiff's constitutional tort claims must be dismissed because they fail to allege the existence of a constitutionally protected liberty or property interest which has been violated. He further argues that no constitutional cause of action should be implied since plaintiff had available and successfully pursued an alternative avenue of relief: the suit in which Judge Parker gave judgment to plaintiff.

The court now concludes that plaintiff's cause of action is barred by res judicata. And it further comcludes that, even if the action were not barred, the court would grant defendant's motion to dismiss as to the constitutional claims, the statutory claim, and the common law tort claims of invasion of privacy, interference with his professional career, and intentional infliction of emotional harm. It would further hold for defendant on the defamation claim on summary judgment.

## II.

The court agrees that principles of res judicata bar the present action. The judgment in *Shewmaker v. Parker* operates as a bar here because in that case plaintiff sought, and obtained, recovery for precisely the same injury complained of in this litigation. As plaintiff himself admits, "both cases involve essentially the same course of wrongful conduct." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Memorandum") at 18. The fact that the earlier suit sought equitable relief, while this suit seeks monetary relief, is not a sufficient distinction to warrant the conclusion that the cases concern separate causes of action. *See e. g. Walworth Co. v. United Steelworkers of America*, 443 F.Supp. 349 (W.D.Pa.1978); *Lambert v. Conrad*, 536 F.2d 1183 (7th Cir. 1976); *see generally* 1B J. Moore, *Federal Practice* ¶ 0.410 at 1156–57. Such a conclusion would be particularly inappropriate in light of the especially broad construction given the term of art for res judicata purposes. *See e. g., Williamson v. Columbia Gas & Elec. Corp.*, 186 F.2d 464, 469 (1950), *cert. denied*, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951).

The present cause of action is, moreover, before the same court that heard plaintiff's earlier complaint. Plaintiff was perfectly free at that time to sue the defendant in his personal capacity for damages as well as in his official capacity for equitable relief, as he did.[1] The failure to raise all the claims arising from a single course of conduct at that time bars the present suit. As our Court of Appeals has held: "[i]f the doctrine of res judicata applies, both parties are concluded, not only as to things which were determined but as to all matters which might have been determined as well." *Tutt v. Doby*, 459 F.2d 1195, 1197 (D.C.Cir.1972). The suit now before the

---

1. Plaintiff's assertion that he was foreclosed from seeking damages in the first suit because of the doctrine of sovereign immunity is erroneous. Plaintiff was not prevented from the common practice of suing the defendant in that suit, in his personal capacity, in addition to his official capacity, thereby obviating the restrictions of the sovereign immunity doctrine. *See e. g., Halkin v. Helms*, 598 F.2d 1 (D.C.Cir., 1978).

court does not involve facts or circumstances unknown to plaintiff at the time of the first suit. *Compare Brotherhood of R. Trainmen v. Atlantic C. L. R. Co.*, 383 F.2d 225, 228 (D.C.Cir.1967), *cert. denied*, 389 U.S. 1047, 88 S.Ct. 790, 19 L.Ed.2d 839 (1968). Accordingly, where, as here, plaintiff alleges no new found facts or circumstances, he must suffer the consequence of his own decision not to pursue all available avenues of relief for his injury at the outset. *See Turner v. Dept. of Army*, 447 F.Supp. 1207, 1211–12 (D.D.C.1978), *aff'd*, 593 F.2d 1372 (D.C.Cir.1979).

The case of *Mervin v. F.T.C.*, 591 F.2d 821 (D.C.Cir.1978) is instructive in this connection. Plaintiff in that case brought suit for reinstatement and damages against the Federal Trade Commission for his wrongful dismissal from a position as an attorney at the agency. The court held for the F.T.C. in part because it concluded that plaintiff's prior attempt at securing administrative review, as well as his two prior lawsuits challenging his dismissal, barred the subsequent suit on grounds of res judicata. The court so concluded because "it is clear that in his first two lawsuits, he was pursuing the same cause of action, involving the same dismissal, as he is in the present suit: seeking reinstatement because of allegedly improper dismissal procedures. Principles of res judicata prevent relitigation not only on the grounds or theories actually advanced, but also on those which could have been advanced in the prior litigation." *Id.* at 830.

Plaintiff asserts that this suit is not barred under principles of res judicata because it involves a different defendant than *Shewmaker v. Parker* did. Plaintiff makes this claim because in *Shewmaker v. Parker* defendant was sued in his official capacity, while in this action he is sued in his personal capacity. He relies for this assertion on section 80 of the *Restatement of Judgments*, which states:

> Where a judgment is rendered for or against a person who is a party to the actio solely in a representative capacity or who is otherwise acting solely for the benefit of another, of which fact the other party to the action has notice, the rules of res judicata do not apply in a subsequent action in which he is a party and is acting solely on his own account. . . .

This principle may preclude application of res judicata where a party's appearance in one, representative capacity in one law suit requires complete devotion to the interests of others, interests which are different from and potentially in conflict with his own interests when appearing in a second suit in his personal capacity. Barring the second action by res judicata might prevent that party with dual responsibility from fully discharging its divergent duties. Such was the concern in *United States v. Washington*, 459 F.Supp. 1020, 1084 (W.D.Washington, 1978), *vacated on other grounds sub nom., Washington v. Fishing Vessel Assn.*, 443 U.S. 658, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979). In that case, the court held that the United States, a litigant on its own behalf, could not be bound by a previous holding in litigation where the United States appeared as the trustee of others. "To find otherwise," the court explained, "would prevent the United States from fully and completely fulfilling its trust obligations. A trustee must be free to act in the interests of the beneficiary and not exercise his duties in any manner other than in the best interests of the beneficiary." No such danger, however, is present in this case. Barring plaintiff's present suit does not run the risk of binding a party to any previous position inconsistent with his present posture.

Application of section 80 of the *Restatement* may also be in order where the party to be barred did not enjoy a realistic opportunity to litigate the question in the first action. For example, a party appearing in one capacity may be faced with issues which not only were not raised, but could not have been raised in earlier proceedings. Thus, in *In re Johnson*, 518 F.2d 246 (10th Cir.) *cert. denied sub nom. Clark v. Johnson*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975), beneficiaries of a trust brought suit against the original trustee for violation of his duty of care because he failed to dis-

cover the embezzlement of trust funds by his bookkeeper after the successor trustee, in a prior action, brought suit against a bank for wrongfully depositing items made out to the trust in the bookkeeper's personal account. The court held that the first suit did not operate to bar the second suit on estoppel grounds. Since the two cases involved not only wholly different relationships, one between the beneficiaries and the trustee, and one between the trustee and the depository bank, but also implicated entirely different facts and legal issues, the court concluded that the failure of the trustee to monitor the bookkeepers activities with sufficient care "could not have been presented in the [first] case," *Id.* at 253 and therefore the action could not be barred on estoppel grounds. Such a concern is inapplicable here. Although the plaintiff introduces new allegations in his second complaint, the facts on which he bases them are essentially the same as those in the first suit and plaintiff was perfectly free to raise these issues in his original complaint.

Finally, the loosening of the traditional limitation on the application of the doctrine of res judicata[2] and the increasing overcrowding of dockets give the courts a duty to restrict unnecessary litigation. It is fitting in the circumstances presented by these two cases to bar the present claims to discourage litigants from seeking redress for an injury in piecemeal fashion, "thus wasting valuable judicial resources and imposing needless burdens on the parties-defendant." *Tutt v. Doby,* 459 F.2d 1195, 1199 (D.C.Cir.1972).

### III.

Even if plaintiff's suit were not barred by res judicata, the court would in any case dismiss all but one of plaintiff's claims for failure to state a claim. One issue involving facts developed outside the pleadings, not susceptible to disposition on a motion to dismiss, must be treated as framed by a *de facto* motion for summary judgment, and, as such it must also be resolved against the plaintiff.

### A. Plaintiff's Constitutional Claims

 Plaintiff fails to state a claim under the fifth amendment to the United States Constitution because plaintiff has no private right of action under that amendment. A private cause of action under the fifth amendment may, as plaintiffs contend, be implied in certain circumstances. But the Supreme Court has emphasized that a private right of action under the constitution arises only if a plaintiff has no alternative form of judicial relief. Thus, in *Davis v. Passman,* 442 U.S. 228, 245, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846 (1979), the Court held that the plaintiff had a right to maintain a constitutional damage action only because she lacked any "other alternative forms of judicial relief." In that case, the Court specifically noted that no administrative remedies were available to Ms. Davis and remarked that "were Congress to create equally effective alternative remedies, the need for damages relief might be obviated." *Id.* 442 U.S. at 247, 99 S.Ct. at 2278. In this case, by contrast, plaintiff had just such alternative avenues of administrative relief, which he not only pursued but in which he also prevailed. Therefore implying a private damage action would be unnecessary and inappropriate.

Moreover, there are other factors. First, plaintiff fails in his complaint to delineate the specific violations of his rights under the fifth amendment. His conclusory allegations fail to specify whether his liberty or his property right has been infringed or to

---

**2.** *See generally, Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 320–330, 91 S.Ct. 1434, 1438–1444, 28 L.Ed.2d 788 (1971); IB J. Moore, Federal Practice ¶ 0.412[1] at 1805–09.

It should specifically be noted that courts have recently stressed that the determination of which parties should be bound by a prior adjudication should be resolved on a case by case basis, by considering the underlying facts and equities rather than solely the formal capacity of the parties. *See Gerrard v. Larsen,* 517 F.2d 1127 (8th Cir. 1975); *Alderman v. Chrysler Corp.,* 480 F.Supp. 600 (E.D.Va.1979). Cf. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (offensive collateral estoppel may be used in trial court's discretion when equitable).

indicate by what particular acts either of these rights has been violated. As Judge Gesell has pointed out, a private cause of action under such circumstances runs the danger both of encouraging private suits against government officials whenever a citizen feels "aggrieved by governmental actions," and of exposing government officials to damage suits whenever their actions are questioned and thus "would constitute a substantial deterrent to government service." *Citizen Savings v. Califano*, 480 F.Supp. 843 (D.D.C.1979).

Even if plaintiff had a private right of action, he would have to demonstrate the violation of a "liberty" or a "property" interest in order to invoke the protection of the fifth amendment. He has done neither.

■ First, he claims a property right in his job that derives both from his civil service status and from the relevant statute. He argues that his years of service as a classified civil service employee, prior to voluntarily assuming the Schedule A position of General Counsel, entitle him to future employment. Yet, plaintiff cannot claim the entitlements of a position that, by his own choice, he no longer held at the time he was terminated.

Plaintiff also argues that § 1331(a)(2) establishes a property interest in continued employment. Yet this claim is contradicted by the plain language of the provision, which states:

> [s]ubject to approval by a majority vote of all the commissioners in office, the chairman may—(A) terminate the employment of any supervisory employee of the Commission whose duties involve substantial personal responsibility for Commission matters and who is compensated at a rate equal to, or in excess of, the rate for grade GS–15 . . . .

This language only establishes the procedures necessary for a legitimate termination; if the procedures are complied with, there is nothing in the statute which bars termination at any time. Cf. *Boland v. Blakey*, Civil Action No. 78–1921 (D.D.C. Dec. 19, 1979).

■ Second, plaintiff claims that his termination violated his liberty interest under the fifth amendment. But the Supreme Court has held that this interest is implicated only if a stigma has been imposed sufficient to foreclose other employment opportunities. *See Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Since plaintiff has been reinstated to the same position he held before the termination, he cannot argue that future employment was severely hampered. Mere criticism of his professional conduct, without other injury, is insufficient to establish a violation of the fifth amendment liberty interest. *See Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Mazaleski v. Treusdell*, 562 F.2d 701, 709–15 (D.C.Cir.1977).

■ Nor, finally, does plaintiff allege a prima facie violation of the constitutional right to privacy. The Supreme Court has defined that right extremely narrowly, applying it only in those circumstances where government has invaded the intimate spheres of life such as marriage, procreation, and education. *See, e. g., Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Roe v. Wade*, 410 U.S. 113, 152–54, 93 S.Ct. 705, 726–727, 35 L.Ed.2d 147 (1973); *Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967). Thus, the allegation of a violation of this right is wholly inappropriate in a dispute over the dismissal of a federal employee from an agency position.

### B. Plaintiff's Statutory Claim

■ Plaintiff argues that he has the right to bring a private damage action for violation of § 1331(a)(2). He contends that, although this provision does not specifically provide for a private right of action for damages, such a right should be implied under the principles established by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1965). The Supreme Court has indicated, however, that a private right of action should only be implied when necessary to enforce the intention of a statutory provision. *J. I. Case*

*Co. v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964), *cited in Cort v. Ash,* 422 U.S. 66, 84, 95 S.Ct. 2080, 2090, 45 L.Ed.2d 26 (1975). As the plain language of § 1331(a)(2) indicates, its intention is simply to ensure that supervisory employees of the Commission not be terminated without the protection of certain procedural safeguards. This interest was fully vindicated by the review of the administrative procedures which plaintiff procured in his prior action and which resulted in his reinstatement. Plaintiff has moreover pointed to nothing in the legislative history which might indicate an otherwise unstated intention to provide an additional damage remedy beyond that of reinstatement pursuant to review of agency procedures.[3] Therefore, his claim under § 1331(a)(2) must fail.

### C. Plaintiff's Common Law Tort Claims

Plaintiff alleges, finally, that defendant, acting outside the scope of his authority, committed the common law torts of invasion of privacy, interference with his professional career, intentional infliction of emotional harm, and defamation. All but the last of these four claims must be dismissed for failure to state a claim upon which relief may be granted.

▮ First, plaintiff has not stated a prima facie case of interference with his professional career. As plaintiff himself points out, one element of this cause of action is a showing of economic damage to plaintiff's career. Yet the only specific damage plaintiff alleges is that, during the period of his reassignment to the position of Senior Advisor, he "could not utilize his legal background and experience" and was hampered in his professional development because he "was precluded from availing himself of current legal decisions and policy." Plaintiff's Memorandum at 37. Such an allegation does not state a claim of damages to plaintiff's economic interests and commercial dealings. *See* W. Prosser, Law of Torts, § 130 (4th ed. 1971).

▮ Second, plaintiff fails to state a prima facie case of intentional infliction of emotional harm. Although, as plaintiff points out, this jurisdiction allows recovery for this tort in the absence of physical impact, a prima facie case is made only when the tortfeasor's conduct is wanton, outrageous in the extreme, or especially calculated to cause serious mental distress. *See Restatement of Torts* 2d § 46. The conduct to which plaintiff refers is not of such a character. Indeed, it has been specifically held, in a case factually similar to this one, that harassment in a professional context, including exclusion from business meetings and the spreading of unfavorable rumors, is not the type of conduct that gives rise to such a cause of action. *See Beidler v. W. R. Grace, Inc.,* 461 F.Supp. 1013 (E.D.Pa.1978), *aff'd,* 609 F.2d 500 (3rd Cir. 1979).

▮ Finally, plaintiff fails to allege a prima facie case of invasion of privacy. A party is liable for this tort only when he intrudes upon private, intimate affairs "from which an ordinary man could reasonably expect that the particular defendant should be excluded." *Pearson v. Dodd,* 410 F.2d 701 (D.C.Cir.), *cert. denied,* 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465 (1969). Yet the statements of which plaintiff complains do not in any way concern facts of such a private nature. Plaintiff cannot claim a reasonable expectation that his professional conduct is protected from outside

---

**3.** Plaintiff points to only one passage of the legislative history as indication of the legislative intent to create a private damage action. In his passage, Congressman Vanik stated that personal differences between the Chairman and key staff personnel should not be permitted to result in the discharge of key personnel or their removal from their positions if a majority of the Commission does not agree with such a proposed action by the Chairman.

123 Cong.Rec. 27080 (1977). This passage merely reflects what is obvious from the language of the statute, namely that the provision is designed to afford minimal procedural safeguards against unjust discharge. It does not speak at all to the issue of a private right of action for damages. It is no more supportive of plaintiff's contention than are the plain words of the statute.

scrutiny. To the contrary, such conduct, while in the employ of the government, is open to and even appropriate for public scrutiny.

As a result, the only tort claim which survives dismissal is plaintiff's defamation claim. Evaluation of this claim necessarily involves a question of fact, since defendant can be held liable only if he is found to have acted outside the scope of his authority. Although this factual determination necessarily precludes dismissal, the court may appropriately treat the parties' papers as motions for and oppositions to summary judgment. *See Carter v. Stanton*, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Fagan v. National Cash Register Co.*, 481 F.2d 1115, 1126 (D.D.C.1973); *Cockrum v. Califano*, 475 F.Supp. 1222, 1226 (D.D.C. 1979) *remanded on other grounds, sub nom. Cockrum v. Harris*, No. 79–1751, 634 F.2d 1358 (D.C.Cir.1980) (per curiam). Our Court of Appeals has specifically held that the determination whether a party acted within the scope of his authority is appropriate for summary judgment, since this determination involves a limited factual inquiry and is for the court to make. *See Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Instit.*, 566 F.2d 289, 292 n.5 (D.C.Cir.1977), *cert. denied* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978).

■ Even assuming as true all the facts as plaintiff presents them in his opposition to defendant's motion to dismiss and his accompanying affidavit, it is clear that the defendant acted well within the scope of his authority. As plaintiff himself observes, defendant committed all the acts complained of while he was a Commissioner and/or Vice Chairman or Chairman of the Commission. Moreover, all these acts were connected with defendant's official activities and duties. They occurred during Commission meetings, during professional conversations with other Commission employees, or were contained in interoffice memoranda or statements made to the press concerning the operation of the Commission and related solely to plaintiff's work performance. Defendant, in his position as a top level official of a federal agency, must have very broad discretion in making personnel and policy decisions if he is to perform his job effectively and conscientiously. The "outer perimeter" of his official authority easily embraces all personnel and policy decisions relegated to his control. As the Supreme Court noted in *Barr v. Matteo*, 360 U.S. 564, 573, 79 S.Ct. 1335, 1340, 3 L.Ed.2d 1434 (1959):

> the higher the post, the broader the range of responsibilities and duties, and the wider the scope of discretion, it entails.

*Barr v. Matteo* is particularly instructive here because the facts in that case are strikingly similar to those here. In *Barr v. Matteo*, former employees of a federal agency sued an official of that agency, alleging that a press release and news reports he had issued gave rise to liability for libel. Even accepting as true the plaintiffs' allegation of malice, the Supreme Court nevertheless, found that such acts were within the scope of the official's employment because

> a publicly expressed statement of the position of the agency head announcing personnel action … was an appropriate exercise of the discretion which an officer of that rank must possess if the public service is to function effectively. It would be an unduly restrictive view of the scope of the duties of a policy-making executive official to hold that a public statement of agency policy in respect to matters of wide public interest and concern is not action in the line of duty.

360 U.S. at 574–75, 79 S.Ct. at 1341–42. The actions reviewed in this case must be similarly regarded.

Defendant's actions were well within the outer perimeter of his authority, so that he has absolute immunity from plaintiff's common law tort claims under the doctrine established in *Barr v. Matteo*. Plaintiff urges that *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) establishes the proper, less sweeping standard, affording defendant only a qualified immunity even when acting within the scope of his authority. *Butz*, however, does not con-

trol a case such as this. Our Court of Appeals has specifically held that the question of the scope of immunity afforded a government employee who is a defendant in a suit for defamation is governed by the standard in *Barr v. Matteo*. *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Instit.*, 566 F.2d at 291 (D.C. Cir.1977). This holding has recently been reiterated since the ruling in *Butz v. Economou* because, the Court of Appeals has stated, absolute immunity must be afforded a government employee whenever the performance of official "discretionary duties" is challenged. *Sami v. United States*, 617 F.2d 755 (D.C.Cir.1979). Decisions by high officials regarding a sensitive personnel matter such as whether a person should occupy the fiduciary role of General Counsel of a federal agency unquestionably fall within this category of discretionary duties. Therefore the court must conclude that the doctrine established in *Barr v. Matteo* requires granting defendant absolute immunity from plaintiff's common law tort claims in this case.

In light of the foregoing, in an accompanying order defendant's motion to dismiss plaintiff's complaint for failure to state a claim is granted, except as to plaintiff's defamation claim, which is resolved against him by summary judgment.