Harry Cody PRESS, M.D., Appellant,

v.

HOWARD UNIVERSITY, et
al., Appellees.

No. 86–627.

District of Columbia Court of Appeals.

Argued Feb. 23, 1988.
Decided March 3, 1988.
As amended April 28, 1988 *.

Arthur M. Reynolds, Jr., Washington,
D.C., for appellant.

Jefferson M. Gray, with whom Robert P.
Watkins, Washington, D.C., was on the
brief, for appellees.

Before PRYOR, Chief Judge, and
TERRY and STEADMAN, Associate
Judges.

TERRY, Associate Judge:

This is an appeal from an order granting
summary judgment to Howard University
and certain of its officers on all of appel-
lant's claims then before the court.[1] The
court ruled that appellant's breach of con-
tract claim was barred by the statute of
limitations,[2] and that the undisputed facts
failed to support his other claims. We are
in almost total agreement with the trial
court. The single respect in which we dis-

---

* This case was originally decided by an unpub-
lished memorandum opinion and judgment.
Appellees' motion for publication has been
granted by the court. In preparing the opinion
for publication, we have added a new footnote 5
to explain a reference that would not otherwise
be clear to the reader.

1. Appellant's complaint originally contained five
counts alleging various claims. However, by
the time of the hearing on the University's mo-
tion for summary judgment, one of those counts
had been withdrawn by appellant, and another
had been dismissed by the court. The three
surviving counts on which the trial court ulti-
mately ruled were those seeking damages for
breach of contract, intentional infliction of emo-
tional distress, and interference with contractu-
al relations.
The court also granted judgment for the Univ-
ersity on its counterclaim for breach of con-
tract, but appellant has not challenged that rul-
ing on this appeal.

2. In the District of Columbia, there is a three-
year statute of limitations for an action on a
contract not under seal. D.C. Code § 12–301(7)
(1981).

agree concerns one aspect of appellant's breach of contract claim. We are nevertheless convinced that the University must prevail on this part of the claim for a reason unrelated to the statute of limitations. Accordingly, we affirm the trial court's judgment in its entirety.

## I

Appellant Press was a professor of radiology and chairman of the radiology department at Howard University School of Medicine. In that capacity he also served as a clinical physician at Howard University Hospital. On March 10, 1980, the medical director of the hospital sent Dr. Press a letter and a telegram suspending him from clinical service in the hospital, retroactively to March 3, for allegedly having taken unauthorized leave during the week of March 3. In due course Dr. Press was also suspended from his position on the faculty of the medical school. In a letter dated May 23, 1980, the dean of the medical school advised Dr. Press that he was recommending that Press' faculty appointment be terminated for cause, that a grievance proceeding would be convened to consider this recommendation, and that in the meantime Dr. Press would be suspended with full salary. The grievance proceeding lasted for three years, but eventually the grievance committee found that the University had not met its burden of proof on the various charges against Dr. Press and directed that he be reinstated in his former position on the faculty of the medical school. The reinstatement was ordered in June 1983, and Dr. Press returned to work in August 1983. He then filed this action against the University on December 19, 1983.

As we have noted, Dr. Press was first suspended from the hospital and then from the medical school. The reason for two separate suspensions was that he worked under two separate but parallel contracts. As a faculty member at the medical school, his employment was governed by the Faculty Handbook. As a physician providing clinical services at the hospital, his terms of employment were determined by the Hospital By-Laws. His hospital activities were also governed by a document known as the "General Agreement" and a one-page attachment thereto. The Hospital By-Laws and the Faculty Handbook spell out the rights and duties of staff members regarding such matters as tenure, termination, and suspension. The General Agreement and its attachment, however, serve a more specific purpose. In 1973 the hospital stopped allowing its physicians to collect fees from private patients. Under the General Agreement, adopted at that time, all private patients were pooled, and in return the physicians received a specified share of revenues generated by the patient pool.

The General Agreement is significant here because Dr. Press, during the period of his suspension, was unable to perform clinical services at the hospital, and as a result he derived no income from the patient pool for more than three years. The General Agreement itself makes clear that the profit-sharing arrangement is available only "to those professionals providing clinical services to the patients of the Hospital," and the attachment—signed by Dr. Press—states the understanding of the parties that any termination of the doctor's faculty appointment "or a reassignment of duties which will prevent my rendering direct patient services to [hospital] patients ... will automatically void this agreement and render me ineligible to participate in the general agreement." Because of his suspension as a hospital staff member and then as a faculty member, Dr. Press could not perform any clinical services at the hospital, and thus he could not participate in the profit-sharing plan established under the General Agreement. Since Dr. Press continued to receive his full faculty salary throughout his suspension, the lost income from the plan was the primary item of damages which he sought to recover in this action against the University and its officers.

## II

■ Dr. Press' principal claim is that the University breached his employment contract when it suspended him from performance of his clinical duties in March 1980

and his faculty position in May 1980. Because this action was not filed until December 1983, more than three years later, the trial court ruled that it was barred by the statute of limitations. We agree. We expressly reject, as without any legal foundation, Press' theory of a "continuing" breach of contract. The cases on which he relies [3] involve a series of repeated acts occurring at different times, not a single act extending over a long period. In these cases the courts have held that the statute begins to run from the last such act. In the case before us, however, the alleged breach of contract—the suspension—occurred only once; Press was not re-suspended at regular intervals during the three-year period. Furthermore, the cases cited by Press do not involve breaches of contract, and we decline to extend their holdings to this breach of contract case in the absence of some authority which would support our doing so.

 In one respect the statute of limitations does not dispose entirely of the breach of contract claim. Dr. Press cites a provision of the Hospital By–Laws (Article IV, Section 6(1)) which imposes a one-year limit on any suspension. He asserts that his suspension was thus invalid not only because it was not in compliance with procedural requirements (the basis of his other claims) but also because it extended for more than one year. Since it was not invalid under the latter theory until after a year had gone by—i.e., until March 1981—he contends that to this extent, at least, his breach of contract action was not barred by the statute of limitations.

There are two flaws in this argument. First, the cited section of the Hospital By–Laws refers only to the suspension of hospital privileges, not staff appointments. A different provision—Article IV, Section 4—makes clear that the academic tenure regulations in the Faculty Handbook determine the status of faculty members who also serve on the hospital staff. Second, the obvious reason for the one-year limit on hospital staff suspensions is that under Article IV, Section 3 of the Hospital By–Laws, no staff appointment may extend for more than one year. Under that section, every appointment to the hospital staff expires on June 30 of each year. Consequently, when Dr. Press' hospital appointment expired on June 30, 1980, his suspension necessarily expired along with it. Thus his hospital suspension did not exceed the one-year limit imposed by Article IV, Section 6. It follows that the University was entitled to judgment as a matter of law on this aspect of Dr. Press' claim.[4]

### III

The remainder of Dr. Press' contentions may be briefly treated.

The trial court was entirely correct in holding that the acts alleged were not sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress. *See Howard University v. Best*, 484 A.2d 958, 985–986 (D.C.1984); *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C.), *cert. denied*, 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982); *Waldon v. Covington*, 415 A.2d 1070, 1076–1078 (D.C.1980); *Shewmaker v. Minchew*, 504 F.Supp. 156, 163 (D.D.C.1980), *aff'd*, 215 U.S.App.D.C. 53, 666 F.2d 616 (1981); *cf. Greenya v. George Washington University*, 167 U.S.App.D.C. 379, 386, 512

---

**3.** *E.g., William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1191 (D.C.1980); *Macklin v. Spector Freight Systems, Inc.*, 156 U.S.App.D.C. 69, 84, 478 F.2d 979, 994 (1973).

**4.** We reject Dr. Press' argument that the University is estopped from relying on the statute of limitations because it "lulled him into inaction" by various statements and actions. The trial court concluded, and we agree, that the estoppel claim lacked adequate factual support. Press' allegations were so vague as to who made the statements and when they were made that they

failed to present "specific facts showing that there is a genuine issue for trial," as required by Super.Ct.Civ.R. 56(e). *See, e.g., Spellman v. American Security Bank*, 504 A.2d 1119, 1123–1124 (D.C.1986) ("conclusory assertions" cannot establish factual dispute sufficient to defeat motion for summary judgment); *Miller v. American Coalition of Citizens with Disabilities, Inc.*, 485 A.2d 186, 191 (D.C.1984) (moving party's allegations must be "countered with specificity").

F.2d 556, 563, *cert. denied,* 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975).

The trial court was also correct in its disposition of the count alleging interference with his employment contract. It ruled that the individual defendants, all of whom were officers of the University, were acting as agents of the other party to the contract, and that the University through their actions could not tortiously interfere with its own contract. There is ample support for this ruling. *See Newman v. Legal Services Corp.,* 628 F.Supp. 535, 541 (D.D.C.1986); *Donohoe v. Watt,* 546 F.Supp. 753, 757 (D.D.C.1982), *aff'd,* 230 U.S.App. D.C. 70, 713 F.2d 864 (1983); *Wilmington Trust Co. v. Clark,* 289 Md. 313, 327–330, 424 A.2d 744, 754–755 (1981) (citing cases); W. KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 129, at 990 (5th ed. 1984). Appellant's assertion of this claim as a separate cause of action borders on the frivolous.

Finally, we agree with, and incorporate herein by reference, footnote 2 of the trial court's order dated March 13, 1986.[5]

### IV

For the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*

---

**5.** In that footnote the court made clear that its ruling did not extend to certain additional claims that Dr. Press might present because they had not been included in his original complaint.