**Mary Frances JONES, Appellant,**

v.

**HOWARD UNIVERSITY t/a Howard University Hospital, Appellee.**

No. 88–1186.

District of Columbia Court of Appeals.

Argued April 17, 1990.

Decided May 16, 1990.

H. Vincent McKnight, Jr., Washington, D.C., for appellant.

Squire Padgett, Washington, D.C., for appellee.

Before TERRY, SCHWELB and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

Mary F. Jones, the plaintiff below, appeals from an order granting summary judgment to the appellee Howard University dismissing a civil rights action which Ms. Jones had brought pursuant to the District of Columbia Human Rights Act, D.C.Code §§ 1–2501 to –2557 (1987 & 1989 Supp.). Ms. Jones had alleged in her complaint that the University had unlawfully discharged her from her job as a dietician at Howard University Hospital on the basis of her physical handicap, which she alleged to be the presence of neuralgia in the left side of her face and tumors in her ovaries and uterus. Although the case raised interest-

ing and novel questions regarding the reach of the Act's proscriptions against handicap discrimination, the trial judge never reached them, concluding that the complaint was time-barred. We agree and therefore affirm.

I

Ms. Jones began her career at the Hospital in 1973. More than ten years later, she was fired. On January 4, 1984, her supervisor, Robert E. Gregory, Director of Nutrition and Food Services, handed her a memorandum advising her that her job performance was unsatisfactory and that she had been recommended for termination. The memorandum advised her that "your right to redress is explained in the Howard University Employee Handbook (Non–Faculty)." On January 6, 1984, Ms. Jones acknowledged receipt of the memorandum and requested a prompt hearing pursuant to the University's employee grievance procedures, which were explained in the handbook. On the same day, Jones's counsel addressed a letter to the University's personnel office requesting an immediate grievance hearing and inquiring as to "the power of the Hearing Examiner to suspend the effect of a Recommendation for Termination pending his decision and action thereon."

On January 13, 1984, Mr. Gregory addressed another memorandum to Ms. Jones which stated as follows:

This communication is to confirm the termination of your employment at Howard University Hospital. Accordingly, the effective date of your termination is Saturday, January 14, 1984.

Pursuant to University policy, you are required to turn in to the Director of Nutrition and Food Service all property issued to you by the University. This is inclusive of all keys and your identification badge. Furthermore, it is necessary that you complete this activity by 2:00 p.m., Friday, January 13, 1984.

Ms. Jones testified that her last day of work at Howard was on or about January 13, 1984.

After several delays, a "grievance" hearing was held on three separate days in April and May 1984. At the conclusion of the hearing, the hearing examiner recommended to Dr. Carlton P. Alexis, Howard's Vice President for Health Affairs, that Ms. Jones's discharge be upheld. In a letter to Ms. Jones dated June 27, 1984, Dr. Alexis acted in accordance with the hearing examiner's recommendation:

> I have reviewed the Formal Grievance Report submitted by Attorney Isiah Leggett, Hearing Examiner, in the hearing on your behalf. You had been employed at the Howard University Hospital since March 1973 and were terminated on January 1984.
>
> \* \* \* \* \* \*
>
> I concur in this recommendation [of the hearing examiner] and deny the appeal.

On June 27, 1985, a year after Dr. Alexis' letter, but almost eighteen months after the stated termination date, Ms. Jones filed her complaint in the Superior Court, requesting reinstatement, back pay, compensation for emotional distress, counsel fees and other relief. As previously noted, the trial judge, Honorable Stephen F. Eilperin, granted the University's motion for summary judgment on the ground that the complaint was untimely.

## II

The limitation period for a civil action brought pursuant to the District of Columbia Human Rights Act is one year. *Davis v. Potomac Elec. Power Co.*, 449 A.2d 278, 280–81 (D.C.1982). That period begins to run at the time "of the occurrence of the unlawful discriminatory practice, or the discovery thereof." D.C.Code § 1–2544(a) (1987).[1] Contending that the complaint was not timely, the University asked the trial court to dismiss the complaint or, in the alternative, to grant it summary judgment. Ms. Jones responded that her claim accrued on June 27, 1984, either on the theory that her termination was not final until after the grievance proceedings had run their course, or that for equitable reasons the limitations period was tolled during the pendency of the grievance proceedings. The trial judge, however, rejected these contentions. He ruled that Ms. Jones had been terminated on January 14, 1984, that the limitations period began to run on that date, and that her complaint had therefore been filed several months too late.[2]

On appeal, Ms. Jones claims for the first time that the notice of termination in January 1984, whether final or not, was but the first in a series of allegedly discriminatory acts by the University which, according to Ms. Jones, continued until June 27, 1984. The latter conduct of which she now complains allegedly included the grievance hearing, the unfavorable recommendation of the hearing examiner, and Dr. Alexis' decision sustaining her termination. Relying on *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), a case arising under the Fair Housing Act of 1968, 42 U.S.C.A. §§ 3601–3631 (West 1977 & Supp.1990), she urges that since the last of these acts occurred within the limitations period, she may properly seek recovery for damages stemming from any or all of them.[3]

1. Section 1–2544(a) sets forth the limitations period for administrative complaints to the Office of Human Rights. *Davis* holds that the same period applies to civil actions under the Act which are brought in the Superior Court.

2. At the time of Judge Eilperin's ruling, this court had not yet issued its decision in *Anderson v. U.S. Safe Deposit Co.*, 552 A.2d 859 (D.C.1989). In *Anderson,* we held that the filing of an administrative complaint under the Human Rights Act with the Office of Human Rights does not toll the limitations period for a civil action. Ms. Jones had also filed an administrative complaint, which was pending from December 1984 to March 1985. We need not decide if *Anderson* applies retroactively because, as Judge Eilperin correctly found, tolling for a three-month period would not make Ms. Jones's complaint timely if her cause of action were deemed to have accrued in January 1984. Conversely, if her action did not accrue until she received Dr. Alexis's letter of June 27, 1984, she need not rely on tolling during the pendency of her administrative complaint to render her civil action timely.

3. The Supreme Court held in that case that a series of incidents which, when viewed together, amount to an alleged policy or "pattern or practice" of discrimination, should be treated as a "continuing violation" for purposes of the 180–

## III

 It is axiomatic that matters not properly presented to the trial court may not generally provide the basis for reversal by this court. *Williams v. Gerstenfeld,* 514 A.2d 1172, 1177 (D.C.1986). " 'Questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party's thesis, will normally be spurned on appeal.' " *D.D. v. M.T.,* 550 A.2d 37, 48 (D.C.1988) (quoting *Miller v. Avirom,* 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967) (footnote omitted)). Parties may not assert one theory at trial and another theory on appeal. *Hackes v. Hackes,* 446 A.2d 396, 398 (D.C.1982). We deviate from this principle "only in exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record." *Williams, supra,* 514 A.2d at 1177; *see also D.D., supra,* 550 A.2d at 48. We discern no such clear miscarriage of justice here.

 Moreover, Ms. Jones has failed adequately to allege any separate acts of discrimination committed by the University after January 14, 1984. Her theory appears to be that although the letter of January 13, 1984 terminated her employment, the refusal to reinstate her through the grievance process constituted one or more new and separate acts of discrimination. Ms. Jones has not, however, presented any evidence that the grievance hearing, the examiner's recommendation, or Dr. Alexis' letter amounted to anything more, for present purposes, than a refusal to set aside a completed[4] discharge which had occurred on January 14, 1984. No discrete discriminatory acts separate from the decisive discharge having been shown, we dis-

cern no basis for contending that any violation continued after Ms. Jones' termination. As Judge Leventhal stated for the court in *Fitzgerald v. Seamans,* 180 U.S.App.D.C. 75, 85, 553 F.2d 220, 230 (1977), "the mere failure to right a wrong and make plaintiff whole cannot be a continuing wrong which tolls the statute of limitations."

## IV

 To the extent that Ms. Jones contends that we should treat her discharge of January 14, 1984 as somehow incomplete or tentative because the grievance proceedings remained pending and could have resulted in her reinstatement, her position is foreclosed by Supreme Court and other precedents. In his order granting the University's motion for summary judgment, Judge Eilperin correctly ruled that

> [r]eview of the final termination through grievance proceedings did not make the termination less final, nor did plaintiff's availing herself of grievance procedures toll the time for statutory action. *International Union of Electrical, Radio & Machine Workers, AFL–CIO, Local 790 v. Robbins & Myers, Inc., et al.,* 429 U.S. 229, 236, 97 S.Ct. 441, 447, 50 L.Ed.2d 427 (1976).

In its most recent declaration on the subject, the Supreme Court reiterated that

> we already have held that pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods. *Electrical Workers v. Robbins & Myers, Inc.,* 429 U.S. 229 [97 S.Ct. 441, 50 L.Ed.2d 427] (1976). The existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations

---

day limitation period. *Havens Realty, supra,* 455 U.S. at 380–81 & n. 23, 102 S.Ct. at 1125 & n. 23, *see also Macklin v. Spector Freight Sys., Inc.,* 156 U.S.App.D.C. 69, 84 & n. 30, 478 F.2d 979, 994 & n. 30 (1973) (racially discriminatory hiring system). There is no allegation or evidence of such systemic discrimination here.

**4.** There is no allegation here that either the hearing examiner or Dr. Alexis accepted a bribe or engaged in some separate wrongful or discriminatory act. There is likewise no allegation

that Ms. Jones applied to be re-hired and was refused re-employment on account of her handicap. The only basis for the claim that Howard's representatives engaged in unlawful discrimination after January 14, 1984, is that they ruled against Ms. Jones with respect to her contention that her dismissal was unjustified. To render a decision between two contestants is not, standing alone, an act of discrimination, whether that decision is right or wrong.

periods normally commence when the employer's decision is made. Cf. *id.*, at 234–235 [97 S.Ct. at 446].

*Delaware State College v. Ricks,* 449 U.S. 250, 261, 101 S.Ct. 498, 505–06, 66 L.Ed.2d 431 (1980) (footnote omitted). The Court added that "[m]ere requests to reconsider ... cannot extend the limitations periods applicable to the civil rights laws." *Id.* at 261 n. 15, 101 S.Ct. at 506 n. 15.[5]

Ms. Jones's situation is also similar to that of the plaintiff in *Press v. Howard University,* 540 A.2d 733 (D.C.1988). In March 1980, Howard informed Dr. Press, who was then professor of radiology and chairman of his department at the medical school, that he was suspended from clinical service at Howard University Hospital. In May 1980, the University suspended Dr. Press from his faculty position. Three years later a grievance committee concluded that "the University had not met its burden of proof on the various charges against Dr. Press" and ordered him reinstated. Dr. Press returned to work in August 1983. In a suit filed on December 19, 1983, Dr. Press alleged that his suspension had been in breach of his employment contract.

The trial judge ruled that Dr. Press's breach of contract claim was barred by the relevant three-year statute of limitations. On appeal, Dr. Press argued that his suspension should be regarded as a "continuing" breach of contract. He contended that the breach began in March 1980 but continued until his reinstatement in 1983. This court rejected that argument as being "without any legal foundation" and held that Dr. Press's suspension "had occurred only once," noting that the doctor had not been "re-suspended at regular intervals during the three-year period." *Id.* at 735.

Like Dr. Press' suspension, Ms. Jones's termination occurred only once—in January 1984. The text of the letter of January 13, 1984 forecloses her claim, asserted at oral argument, that she had merely been suspended in January and was not finally terminated until June. As in *Ricks* and *Press,* the availability of a grievance mechanism which enabled Ms. Jones to seek reinstatement did not convert a final termination into a temporary suspension.[6]

Ms. Jones cites *Kyriakopoulos v. George Washington University,* 275 U.S.App.D.C. 237, 866 F.2d 438 (1989), as authority for her position. That case, which involved successive refusals to promote the plaintiff to a full professorship, is in all respects consistent with our decision here. Citing, among other authorities, *Ricks, Fitzgerald* and *Press,* the court held in *Kyriakopoulos* that those of the plaintiff's claims which were based on decisions unfavorable to him made more than three years prior to the institution of suit were time-barred under the three-year statute of limitations for breach of contract. The court reached this conclusion notwithstanding the fact that the plaintiff continued in his non-promoted status. *Kyriakopoulos, supra,* 275 U.S. App.D.C. at 242, 866 F.2d at 443.[7] During the course of the opinion, the court distinguished, for purposes of the statute of limitations, between multiple breaches of a "continuing duty" and a single breach. The court explained that

[c]ontinuing duties may arise directly from a contract ... or from other legal

5. In *Ricks,* the Supreme Court was construing the federal statute prohibiting discrimination in employment, 42 U.S.C. § 2000e–5 (1982). We discern no reason, however, to rule differently in the context of the District's Human Rights Act.

6. Early in the grievance proceedings, counsel for Ms. Jones remarked that a personnel recommendation form dated January 12, 1984 states that "Miss Jones is being recommended for termination based upon unsatisfactory work performance." In response to a narrative which included this remark, counsel for the University said: "[t]hat is correct." Without more, this rather casual comment by counsel for the University cannot fairly be characterized as a concession that the letter of January 13, 1984—a different document from the one counsel was apparently describing—was merely a recommended dismissal, when the explicit language of that later letter conclusively establishes the contrary.

7. The court remanded the case for clarification or other further action as to two specific causes of action for somewhat complex reasons relating, *e.g.,* to the trial judge's treatment of expert testimony. *Id.* at 246, 866 F.2d at 847.

sources (*e.g.*, the prohibition of defamatory statements). If, in this hypothetical case, a university committee of five members considers a professor's application and issues a report libeling him, and subsequently does so again as part of a grievance proceeding several years later, the later actions are actionable even though they constitute a repetition of the earlier contract breach and libel. No issue of tolling arises, even though the statute of limitations may bar a suit based upon the committee's earlier actions.

*Id.* at 246–47, 866 F.2d at 447–48.

The present case cannot instructively be compared with one in which there were successive repetitions of the same defamatory statement. Each such repetition is a new assault on a plaintiff's reputation. Although the first defamation may have damaged the plaintiff's character, a second slander or libel can cause further injury. Once Ms. Jones had been discharged, on the other hand, she no longer had a job which could be taken from her. A single deed by the University caused all of her alleged travail. The reaffirmance of the propriety of that deed by the hearing examiner and by Dr. Alexis during the course of the grievance proceedings could not rationally translate a completed dismissal into a series of multiple alleged wrongs.

### V

In *Davis*, this court refused to apply a three-year limitations period to civil actions brought pursuant to the Human Rights Act. Instead, we applied the one-year statutory period for administrative proceedings, citing "the impermanent nature of the evidence upon which discrimination claims are based as well as the desire to promote rapid compliance with the Act." *Davis, supra,* 449 A.2d at 281. If we were to adopt Ms. Jones' theory, a terminated employee could effectively restart the clock on her claim merely by asking her former employer to reconsider its decision to fire her. Such a request could come weeks, months or years after the employee's discharge. This would thwart the sound poli-cies, described in *Davis*, which are promoted by the application of the one-year limitations period. In our view, Ms. Jones has cited no precedent which supports her thesis, and the result which she seeks would be contrary to the substantial case authority which we have reviewed in this opinion. Accordingly, the judgment on appeal must be and it is hereby

*Affirmed.*